## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | TYLER GAINES, | ) |
| | | ) |
| | Plaintiff, on behalf of himself | ) |
| | and others similarly situated, | ) |
| | | ) |
| v. | | )     CIV-15-414-C |
| | | ) |
| 1. | MIDWEST SPORTING GOODS | ) |
| | DISTRIBUTORS, INC., | )     JURY TRIAL DEMANDED |
| | | )     ATTORNEY LIEN CLAIMED |
| 2. | MIDWEST RACQUETBALL AND | ) |
| | SPORTING GOOD | ) |
| | DISTRIBUTORS, INC., | ) |
| | | ) |
| 3. | JOHN H. LASSITER, | ) |
| | | ) |
| | Defendants. | ) |

## COMPLAINT

**COMES NOW THE PLAINTIFF** and hereby pleads his claims as follows:

## PARTIES

1.  The Plaintiff is Tyler Gaines an adult resident of Oklahoma County, Oklahoma.  Mr. Gaines pleads on behalf of himself and others similarly situated.

2.  The Defendants are Midwest Sporting Goods Distributors, Inc. (Defendant "Sporting Goods"), a company doing business in Oklahoma County, Oklahoma; Midwest Racquetball and Sporting Goods Distributors, Inc. (Defendant "Racquetball"), a company doing business in Oklahoma County, Oklahoma; and John H. Lassiter, an individual resident of Tulsa County, Oklahoma.

## JURISDICTION AND VENUE

3.  Plaintiff's claims are for failure to pay wages in violation of the Fair Labor Standards Act as set out in 29 U.S.C. § 206, 215, *inter alia*, and Oklahoma's Protection of Labor Act as set out in 40 O.S. §165.1, *et seq*.  Jurisdiction over the federal claims is vested in this Court under  29 U.S.C. § 216 and 28 U.S.C. § 1331.

4.  Many of the actions complained of occurred in Oklahoma County, Oklahoma and the Defendant may be served in that county.  Oklahoma County is within the Western

District of the United States District Courts for Oklahoma wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

### STATEMENT OF FACTS

5.  The Defendants Sporting Goods and Racquetball are companies which provide sporting equipment to various clubs, schools and other entities located in states including Oklahoma and, to Plaintiff's present knowledge and belief, Arkansas. Defendants operate a website whereby products may be purchased online from Oklahoma and other states.  The Defendants have, jointly and/or separately, annual gross receipts exceeding five hundred thousand dollars ($500,000).  The defendant entities are both covered employers under the Fair Labor Standards Act and the Oklahoma Protection of Labor Act.

6.  Defendant Lassiter is the owner of Defendants Sporting Goods and Racquetball, the Plaintiff's supervisor and responsible for paying the Plaintiff or, in this case, refusing to pay the Plaintiff the wages he is owed.

7.  The Plaintiff worked for the Defendants from around November 2010, until around June 2013.

8.  The Plaintiff did not have a written employment agreement.

9.  The Plaintiff did not voluntarily enter into a payroll deduction agreement.

10. Plaintiff's job duties included meeting customers, memorialize product orders of customers, and transmit the order to the Defendant company so that the order could be filled.  Additionally, Plaintiff ensured that the product purchased by customers was decorated to the liking and specifications desired by the customer, and communicating with the art director of the Defendant companies to ensure accurate communication between the customers and the Defendants.

11. The Plaintiff was to be paid commissions on initial sales made to customers.  Plaintiff earned such commissions upon making an initial sale to the customer and transmitting

-2-

the corresponding order to the Defendants.

12.    The Defendant paid the Plaintiff only in the form of commissions which were to be paid within thirty days of the "set up" date of each year, which was the yearly anniversary of Plaintiff's employment.

13.    For instance, because the Plaintiff began working on November 30, 2010, his "settle up" day was November 30th of every year.  In this regard, the Defendants paid the Plaintiff his wages from a twelve month period of November 30th of one year to November 30th of the following year only after the latter date passed.  Defendant promised to pay the Plaintiff his wages earned each twelve month period within thirty days of each "settle up" date.

14.    The Defendant paid the Plaintiff a set sum of money in the form of a "loan" or "draw" every two weeks.  However,  this amount was considered by the Defendant to be a "loan" which Defendant required Plaintiff to pay back if the commissions owed to him were less than the "loan" or "draw" amount.

15.    Additionally, Defendants made unlawful deductions from Plaintiff's wages including, but not limited to:

    A.    Deductions for sample products Plaintiff was required to provide to customers and potential customers;

    B.    Defendant has made and attempted to make deductions in the form of surcharges on goods and products;

    C.    Deductions of "bad debt" and when customers do not pay;

    D.    Deductions for promotional products and salesman samples;

    E.    Defendant would deduct from Plaintiff's wages multiple deductions which were already made.

    F.    Defendant made deductions from Plaintiff's wages for charges incurred prior to the Plaintiff's employment.

16.    One or more unlawful deductions were made by the Defendant during every week of Plaintiff's employment.

17.    The deductions made to the Plaintiff's wages, including those described in Para. 15, above, were also made to other sales persons before, during, and after the Plaintiff's employment.  Such deductions were made pursuant to a practice and policy of the Defendant and made to all sales persons.

18.    The unlawful manner of paying Plaintiff's wages was also used in the unlawful withholding and non-payment of wages of other sales persons.  Who worked before, during, and after the Plaintiff's employment.

19.    Plaintiff's last date of employment was around June 16, 2013.

20.    The Defendant refuses to pay Plaintiff the wages he earned between December 1, 2012 and the end of the Plaintiff's employment around June 16, 2013.

21.    As a result of the Defendants' conduct, the Plaintiff and other class members have suffered damages in the form of unpaid wages.

22.    The deductions made to the Plaintiff's wages were made without a payroll deduction agreement and were taken in violation of the FLSA and OPLA.

23.    Defendant's failure to pay Plaintiff and other class members the wages they have earned within eleven days of earning such wages is a violation of the OPLA.  Failure to pay Plaintiff wages violates both the OPLA and FLSA.

24.    Plaintiff and class members are entitled to their unpaid wages and liquidated damages in the amount of their unpaid wages under the FLSA and OPLA.

25.    Because the Defendants' conduct was willful, Plaintiff and class members are entitled to liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned, even if such amount exceeds the amount of Plaintiff's lost wages.

26.    Because Defendants' conduct is willful, Plaintiff and class members are  entitled to

seek damages for a three year time period from the date of filing this lawsuit. There is no statute of limitations under the OPLA.

27. Plaintiff and class members are also entitled to an award of attorney fees and costs.

## CLASS CERTIFICATION

28. The actions above described constitute:

   A.   An illegal policy which is contrary to the FLSA as well as Oklahoma law; and

   B.   The non-payment of wages and failure to pay minimum wage as prohibited by the FLSA and by Oklahoma's wage laws.

29. Because Plaintiff's injuries arise from an unlawful policy, Plaintiff should, upon discovery of the identity of the similarly treated employees, be entitled to a certification of a class of injured employees entitled to such relief. There are approximately, to Plaintiff's knowledge, twenty to forty employees who would be subject to the same unlawful policy and who would have suffered the same injury with the only distinction being the amount of injury each suffered.

30. The class is specifically knowable and defined as it consists of current and former employees of the Defendant who were paid in the same manner as the Plaintiff as described above and who received the unlawful wage deductions.

31. The class is sufficiently numerous that it is impractical to name each member of the class individually and such that a class action is most economical, expeditious and just way of managing this claim.

32. There are questions of law or fact common to the class, including:

   A.   Whether the deductions from the employees' wages constituted illegal deductions under the FLSA;

   B.   Whether the deductions from the employees' wages constituted illegal deductions under the OPLA;

C.    Whether the manner of paying employees' at the end of a "settlement" period is lawful under the FLSA; and

D.    Whether the manner of paying employees' at the end of a "settlement" period is lawful under the OPLA; and

33.    Plaintiff Gaines, as the class representative, shares the same questions of law and fact with other class members and will fairly and adequately protect the interests of the class.

34.    The only factual matter different between the collective plaintiffs would be the amount of wages lost and damages owed.

**WHEREFORE,** Plaintiff prays that he be granted judgment in his favor and against the Defendant on all of his claims, and that this Court grant the Plaintiff and class members all available compensatory damages, punitive damages, liquidated damages, pre- and post-judgment interest, costs, attorney fees and any other legal or equitable relief allowed by law, including reinstatement.

**RESPECTFULLY SUBMITTED THIS <u>17th</u> DAY OF APRIL, 2015**.

HAMMONS, GOWENS & HURST

s/Amber L. Hurst
Mark Hammons, OBA No. 3784
Amber L. Hurst OBA No. 21231
HAMMONS, GOWENS & hurst
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-6100
Facsimile:  (405) 235-6111
Email: Amberh@hammonslaw.com
         Mark@hammonslaw.com
*Counsel for Plaintiff*

-6-